UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RACHEL DEUTSCH, individually and behalf of all others similarly situated, *Plaintiff*, <br><br> v. <br><br> CONSTAR FINANCIAL SERVICES LLC, *Defendant*. | No. 3:22-cv-1416 (VAB) |

**RULING AND ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS**

Rachel Deutsch ("Plaintiff") has sued Constar Financial Services, LLC ("Constar" or "Defendant"). Ms. Deutsch alleges that Constar has violated the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 *et seq.*, by sending her a letter seeking to collect a debt that she alleges she does not owe. Compl. ¶¶ 17–23, 36, ECF No. 1 (Nov. 8, 2022) ("Compl.").

Constar has moved for judgment on the pleadings, arguing that Ms. Deutsch's claims fail as a matter of law because the FDCPA does not apply to the debt at issue in this case. Mot. for J. on the Pleadings, ECF No. 11 (Apr. 20, 2023) ("Mot.").

For the following reasons, the Court **DENIES** Constar's motion for judgment on the pleadings.

I.   **FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND**

A.   Factual Allegations

On January 6, 2021, Ms. Deutsch entered into a lease agreement with Hyundai Capital America d/b/a Hyundai Motor Finance, Kia Finance America and Genesis Finance, as servicer for Hyundai Titling Trust ("Hyundai"), a nonparty to this case. Compl. ¶¶ 11–12; New Jersey Lease, Ex. A to Mot. at 6, ECF No. 11-1 (Apr. 20, 2023) (the "Lease Agreement").

Under the terms of the Lease Agreement, Hyundai was the registered owner of the leased

car. *Id.* ¶ 27.

At termination of the lease, Ms. Deutsch, as the lessee, had the responsibility of paying to Hyundai the amount of any personal property and other taxes applicable to the vehicle for tax periods occurring before termination. Lease Agreement § 25(D)(3).

The lease agreement specified that the governing law was "the internal laws of the state in which the Dealer is located as shown by the Dealer's address in Section 1 of this Lease"—in this case, New Jersey. *Id.* §§ 1, 26(P).

On or about October 1, 2021, the leased car had to be declared totaled, and Hyundai received full compensation for the car by a third-party insurance carrier shortly after. Compl. ¶ 22.

On or about August 9, 2022, Ms. Deutsch received a letter from Constar seeking to collect a debt of $889.12 owed to Hyundai. *Id.* ¶¶ 17–18; Ex. A. to Mot. at 1, ECF No. 11-1 (Apr. 20, 2023) (the "Letter").

The Letter included an attached document, stating that Ms. Deutsch owed to the Waterbury City Tax Collector $408.69 for tax year 2020 and $480.43 for tax year 2021. Compl. ¶¶ 19–20; Letter at 4–5.

The Letter did not clearly define the source or status of the debt. Compl. ¶ 23.

When Ms. Deutsch called to inquire about the debt, she was informed that it stemmed from a property tax assessment following the car being declared totaled, and that Hyundai could seek an abatement, if requested. *Id.* ¶ 25. Ms. Deutsch then sent an e-mail to Hyundai formally requesting that Hyundai seek a tax abatement and requesting that the debt not be reported to the credit bureaus. *Id.* ¶ 26. Ms. Deutsch did not pay the debt because she believed it was a fraudulent attempt to collect monies not owed. *Id.* ¶ 46.

Since she received the Letter, Ms. Deutsch's credit has suffered, and she has suffered financial detriment, in the form of interest, fees, and other charges. *Id.* ¶¶ 47–48.

Because of these events, Ms. Deutsch has also suffered emotional distress, including but not limited to, fear, anxiety, stress, an increased heartrate, and difficulty sleeping. *Id.* ¶ 49.

B. Procedural History

On November 8, 2022, Ms. Deutsch filed the Complaint. Compl.

On December 6, 2022, Constar filed an Answer to the Complaint with Affirmative Defenses. Answer, ECF No. 8.

On April 20, 2023, Constar filed a motion for judgment on the pleadings. Mot.

The same day, Constar filed a motion to stay discovery pending this Court's ruling on the motion for judgment on the pleadings. Mot. to Stay Discovery, ECF No. 10.

On May 8, 2023, the Court denied the motion to stay discovery. Order, ECF No. 13.

On May 11, 2023, Ms. Deutsch filed a memorandum in opposition to the motion for judgment on the pleadings. Mem. in Opp'n to Mot. for J. on the Pleadings, ECF No. 11 ("Opp'n").

On May 24, 2023, Constar filed a reply in response to Ms. Deutsch's opposition. Reply to Response to Mot. for J. on the Pleadings, ECF No. 15 ("Reply").

II. **STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 12(c), "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In deciding a motion for judgment on the pleadings, the Court applies the same standard applicable to motions to dismiss brought under Federal Rule of Civil Procedure 12(b)(6). *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). Accordingly, the "complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* A court must accept as true all factual allegations in the complaint and draw all possible inferences from those allegations in favor of the plaintiff. *See York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002), *cert. denied*, 537 U.S. 1089 (2002). The issue is not whether the plaintiff ultimately will prevail, but whether the plaintiff has stated a claim upon which relief may be granted, such that it should be entitled to offer evidence to support its claim. *See id.* (citation omitted).

While a court must accept as true the allegations in a complaint, this requirement "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007).

In determining a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), "the court may consider any of the pleadings, including the complaint, the answer, and any written instruments attached to them." 2 Moore's Federal Practice 3D § 12.38 (2016); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (explaining that a court need not convert a motion to dismiss into a motion for summary judgment when it considers "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference," and noting that "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint") (quoting *Int'l Audiotext Network, Inc. v. am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

"[A] party is entitled to judgment on the pleadings only if it has established that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law." *Gioconda L. Grp. PLLC v. Kenzie*, 941 F. Supp. 2d 424, 426–27 (S.D.N.Y. 2013) (internal quotation marks and citations omitted).

## III.    DISCUSSION

The sole issue raised in Constar's motion for judgment on the pleadings is whether the debt at issue in this case—which arose from a Connecticut state tax obligation related to the car that Ms. Deutsch was leasing—qualifies as a debt under the FDCPA. Mot. at 2.[1]

The Court begins with a survey of the relevant law surrounding the definition of "debt" under the FDCPA.[2] Enacted in 1977, the FDCPA seeks to "eliminate abusive collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

"A claim for violation of the FDCPA requires the plaintiff to allege the following three elements: (1) that the plaintiff is a 'consumer' who allegedly owes a debt or a person who has

---

[1] Constar did not raise this argument in its Answer, which enumerated several affirmative defenses. *See* Answer at 6–7. Generally, Fed. R. Civ. P. 12(b) provides that defenses enumerated in that section—including the claim at issue here, failure to state a claim upon which relief can be granted—must be asserted in the responsive pleading, or by motion before interposing a responsive pleading. Rule 12(h)(2), however, provides that the defense of failure to state a claim upon which relief can be granted may be raised on a motion for judgment on the pleadings under Rule 12(c). *See also* CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, 5C FED. PRAC. & PROC. CIV. § 1367 (3d ed. 2021). Accordingly, Constar's arguments are properly raised in this motion.

[2] The Court notes that there are likely to be choice of law issues at play in this case. The Court need not address these issues at this juncture, however, because doing so is not necessary to resolve this motion. Here, the Lease Agreement specifies that New Jersey state law governs the contract; the taxes at issue are Connecticut state taxes; and Plaintiffs claims are brought under a federal statute, the FDCPA. In the pleadings before the Court at this time, there are no contract law issues. Accordingly, the Court need not apply New Jersey state law. In analyzing the nature of the tax obligation at stake in the case, the Court applies Connecticut state law because the taxes were assessed under Connecticut statute. Finally, the Court applies Second Circuit case law to interpret provisions of the FDCPA. *See, e.g., Davis v. Dynata, LLC*, No. 3:22-CV-1062 (SVN), 2023 WL 6216809, at *6 (D. Conn. Sept. 25, 2023) ("courts in this Circuit have held that contract provisions mandating the application of a certain state's law do not govern the court's interpretation of a federal statute"); *Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*, 239 F. Supp. 2d 322, 328 (S.D.N.Y. 2002) ("state law plays no role in the interpretation of [a] federal statute").

5

been the object of efforts to collect a consumer debt; (2) the defendant collecting the debt is a 'debt collector' as that term is defined by the FDCPA; and (3) that the defendant has engaged in any act or omission in violation of the FDCPA." *Aviles v. Wayside Auto Body, Inc.*, 49 F. Supp. 3d 216, 225 (D. Conn. 2014). For the purposes of this motion, Constar has not contested that Ms. Deutsch is a consumer or that it is a debt collector. Constar contests only that the tax assessment at issue in this case qualifies as a debt under the Act. Mot. at 2.

Under the FDCPA, debt is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). While a number of Second Circuit cases have examined the distinction between consumer and commercial debt—*see, e.g.*, *Scarola Malone & Zubatov LLP v. McCarthy, Burgess & Wolff*, 638 Fed. App'x 100, 102–03 (2d Cir. 2016); *Nicolaides v. Divine and Service, Ltd.*, 382 F. Supp. 3d 251, 255–59 (E.D.N.Y. 2019)—caselaw in this Circuit regarding what obligations qualify as "debt" under the FDCPA is limited.

In *Beggs v. Rossi*, the Second Circuit held that personal property taxes levied on plaintiffs' automobiles by the Town of Exeter did not qualify as debts within the meaning of the FDCPA. 145 F.3d 511, 512 (2d Cir. 1998), *affirming Beggs v. Rossi*, 994 F. Supp. 114 (D. Conn. 1997). The court found that the automobile tax was not a transaction-based tax stemming from the purchase or registration of the vehicle; rather, it was a tax "levied . . . upon the ownership of the vehicle by the citizen." *Beggs*, 145 F.3d at 512. The court thus held that the tax could not qualify as a consumer debt under the FDCPA. *Id.* (citing 15 U.S.C. § 1692a(5) (defining a debt as "any obligation or alleged obligation of a consumer to pay money arising out of a

6

transaction")). The court also weighed a policy statement by the Federal Trade Commission ("FTC"), which concluded that, under the FDCPA, "[t]he term [debt] does not include: unpaid taxes." *Beggs*, 145 F.3d at 512 (quoting FED. TRADE COMM'N, *Statements of General Policy or Interpretation, Staff Commentary on the Fair Debt Collection Practices Act*, 53 FED. REG. 50097, 50102 (Dec. 13, 1988)) (alterations in original).

More recently, the Second Circuit extended this logic, finding that New York City's mandatory water and sewer charges did not constitute debt under the FDCPA because they were levied incident to property ownership, much like the vehicle tax in *Beggs*, and therefore did not encompass the type of exchange envisioned by the FDCPA. *Boyd v. J.E. Robert Co., Inc.*, 765 F.3d 123, 126 (2d Cir. 2014).

The *Beggs* court relied heavily on *Staub v. Harris*, in which the Third Circuit held that a per capita tax levied by Pennsylvania taxing districts did not constitute a "debt" under the FDCPA. 626 F.2d at 279 (3d Cir. 1980). There, the court held that the FDCPA "does not apply to practices occurring in the course of collection of taxes" because the FDCPA contemplated debts arising "as a result of the rendition of a service or purchase of property or other item of value." *Id.* at 278. The relationship between taxpayer and taxing authority, it explained, "[did] not encompass that type of pro tanto exchange which the statutory definition envisages." *Id.*

In *Pollice v. Nat'l Tax Funding, L.P.*, following the logic of *Staub*, the Third Circuit held that homeowners' property tax obligations do not constitute debts under the FDCPA because the obligation to pay property taxes arose from the ownership of property, rather than a transaction. 225 F.3d 379, 402 (3d Cir. 2000), *abrogated on other grounds sub nom. Tepper v. Amos Financial, LLC*, 898 F.3d 364 (3d Cir. 2018). The court explicitly rejected the plaintiffs' argument that their obligations changed in character when transferred from the State to the

defendant debt collector. *Pollice*, 225 F.3d at 402. Regardless of the debt collection entity to whom the plaintiffs' obligation was ultimately owed, or any alteration of the obligation due to creation of payment plans, the court found that the obligation arose from the levying of taxes based on the fact of ownership. *Id.* at 402–03. Therefore, it did not qualify as a "debt" under the FDCPA. *Id.*

In *Pollice* and a subsequent case, *Piper v. Portnoff Law Associates, Ltd.*, 396 F.3d 227 (3d Cir. 2005), the court found that water and sewer utility obligations, on the other hand, did constitute FDCPA "debt" because the obligation to pay for such services arises from homeowners' voluntary consumption of those resources, not from any legal status (such as homeowner). *Pollice*, 225 F.3d at 400; *Piper*, 396 F.3d at 233 n.8. This exchange, which was based on the homeowners' voluntary acceptance of city services that benefited them, therefore constituted the type of transaction, or *pro tanto* exchange, contemplated by the FDCPA. *Id.*

Finally, in *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, the Third Circuit proposed a three-part test to evaluate whether an obligation constitutes "debt" under the FDCPA. 898 F.3d 351 (3d Cir. 2018). First, a court should consider whether the underlying obligation arose: (A) out of a transaction, meaning a consensual exchange involving an affirmative request and the rendition of a service or purchase of property or other item of value, or (B) by virtue of a legal status, such as property owner, legal resident, or tortfeasor or other type of offender under criminal or civil law. *Id.* at 360. Second, if the court concludes that the obligation arises from a transaction, it should next identify what "money, property, insurance, or services . . . are the subject of the transaction," meaning what is being rendered in exchange for the monetary payment. *Id.* at 361. Third, the court should consider the characteristics of that which is being

8

rendered in exchange for the monetary payment, in order to determine whether it is "primarily for personal, family, or household purposes." *Id.* (quoting 15 U.S.C. § 1692a(5)).

While the *St. Pierre* test is not binding on this Court, it provides a helpful framework, consistent with Second Circuit caselaw.[3] And because Constar has not contested that the obligation at issue in this case is consumer, rather than commercial, the Court focuses on the first factor identified by the Third Circuit: whether the tax obligation at issue arises out of an underlying transaction, or whether it simply arises by virtue of a given legal status.

The parties broadly agree that the Waterbury City Tax Collector sought to collect the tax at issue under Connecticut's property tax statute. The parties assert that the tax, however, has been specifically assessed under different provisions of the property tax statute—and this difference is material in determining whether the taxes owed constitute "debt" under the FDCPA.

Constar asserts that the tax is due under § 12-71(f)(1),[4] which states, "[f]or assessment years commencing prior to October 1, 2023, property subject to taxation under this chapter shall include each registered and unregistered motor vehicle and snowmobile that, in the normal course of operation, most frequently leaves from and returns to or remains in a town in this state[.]" Mot. at 6–7. Constar argues that Ms. Deutsch's claim fails at this step because the obligation in this case arises out of a property tax that does not arise from Ms. Deutsch's voluntary election to receive any services from the authority levying the property tax and it cannot be traced to an underlying transaction. Mot. at 7.

---

[3] As noted above, the Second Circuit in *Beggs*, and later in *Boyd*, relied on Third Circuit precedent in addressing the underlying FDCPA issues involved in this case. *See Boyd*, 765 F.3d at 126 n.4 (commenting on the Third Circuit's treatment of related matters); *Beggs*, 145 F.3d at 512 ("agree[ing] . . . that [the Third Circuit's opinion in] *Staub* is persuasive authority and is dispositive in this case.").
[4] This statute has been updated since the submission of the filings in this case. Because the changes do not bear on the issues in this case, the Court will rely on the version of the statute cited in the Defendant's brief.

Ms. Deutsch, on the other hand, asserts that the tax is owed under § 12-71b(a)(1),[5] which states:

> For assessment years commencing prior to October 1, 2023, any person who owns a motor vehicle which is not registered with the Commissioner of Motor Vehicles on the first day of October in any assessment year and which is registered subsequent to said first day of October but prior to the first day of August in such assessment year shall be liable for the payment of property tax with respect to such motor vehicle in the town where such motor vehicle is subject to property tax, in an amount as hereinafter provided, on the first day of January immediately subsequent to the end of such assessment year.

Ms. Deutsch emphasizes that taxes under § 12-71b(a)(1) are enacted on the owner of the vehicle in question, not the lessee. Opp'n at 13–14. Based on this, Ms. Deutsch argues that the obligation in this case arises out of a transaction because it can be traced to the terms of the Lease Agreement. *Id.* at 14–15. Essentially, Ms. Deutsch argues that the tax obligation here was levied directly on the vehicle owner, in this case Hyundai. *Id.* As lessee, Ms. Deutsch's obligation to pay the property taxes arises solely from the lease contract, which is based on a transaction. In her view, the obligation therefore constitutes a "debt" under the FDCPA. *Id.* at 14.

Constar replies that Ms. Deutsch's logic "elevate[s] the form of the debt over its substance" and seeks to distract from the fundamental fact that the debt at issue arises from ownership of the vehicle and was imposed as a tax. Reply at 4.

The Court disagrees.

The record establishes that Ms. Deutsch owed $408.69 for the 2020 tax year, and $480.43 for the 2021 tax year, for a total of $889.12. *See* Letter at 4–5. But the underlying documentation does not specify the statutory source of the tax liability. This factual question is material:

---

[5] This statute has been updated since the submission of the filings in this case. Because the changes do not bear on the issues in this case, the Court will rely on the version of the statute cited in the Defendant's brief.

whether the obligation constitutes a "debt" under the FDCPA, and therefore whether this action states a claim upon which relief may be granted, is dependent on the specific statute under which the obligation arose. *Gioconda L. Grp. PLLC*, 941 F. Supp. 2d at 426–27 ("[A] party is entitled to judgment on the pleadings only if it has established that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law.") (internal punctuation marks omitted).

If, as Constar suggests, the tax liability here stems from Ms. Deutsch's use of the leased car in Waterbury under Conn. Gen. Stat. § 12-71(f)(1), then it may not qualify as a debt under the FDCPA. Importantly, this statute taxes vehicles, whether registered in the state or not, that are regularly parked or located within the state. Recently, the Connecticut Supreme Court interpreted § 12-71(f)(1) to enable a Connecticut town to assess a property tax on a resident operator of a motor vehicle that, in the normal course of operation, most frequently left from and returned to the town—even though the owner resided in another state and paid taxes on the vehicle in Massachusetts. *Alico, LLC v. Town of Somers*, 304 A.3d 851, 854 (Conn. 2023). Significantly, the court found that § 12-71(f)(1) assessed a personal property tax directly on the operator of the motor vehicle, rather than the owner, and held that such a tax was "qualitatively different" from an excise tax levied on the privilege of registering or purchasing a vehicle. *Id.*

Such a tax is therefore not dependent on any given transaction or on the voluntary receipt of services from the State or Town, but rather arises from the taxed individual's status as a Town resident that regularly uses a car. Moreover, property taxes under § 12-71(f)(1) are imposed directly on the operator of the vehicle. Therefore, if the obligation at issue here was assessed under § 12-71(f)(1), under the *St. Pierre* test, as well as *Beggs*, such an obligation might not constitute a "debt" under the FDCPA.

If, as Ms. Deutsch suggests, the tax liability stems from § 12-71b(a)(1), then the Court arguably could find that it does qualify as a "debt" under the FDCPA. Under this statute, a lessee, such as Ms. Deutsch, would not be responsible for a tax assessment under § 12-71b(a)(1), unless her obligation arose from a subsequent agreement. Here, the terms of the Lease Agreement obligate Ms. Deutsch to cover any state taxes levied on the leased vehicle, and her obligation to pay taxes under § 12-71b(a)(1) therefore arises from the transaction of leasing the car and arguably constitutes a "debt" under the FDCPA. *See Beggs*, 145 F.3d at 512 (distinguishing the tax there as not involving a "transaction" . . . of the kind contemplated by the statute."); *Staub*, 626 F.2d at 278 (focusing on a "debt [that] has arisen as a result of the rendition of a service or purchase of property or other item of value") (internal quotation and citation omitted); *Boyd*, 765 F.3d at 126 n.4 (distinguishing between a system in which water and sewer charges are based upon consumption and a system in which "the charges are levied automatically in connection with the property ownership"); *cf. St. Pierre*, 898 F.3d at 362 ("St. Pierre would have no obligation to pay highway tolls had he chosen to use alternative routes or to keep his car parked rather than drive on the [New Jersey Turnpike] Authority's roads; the homeowners in *Pollice* and the residents in *Staub* had no such choice.").

Accordingly, because of this unresolved factual issue, the Court cannot determine that Defendant is entitled to judgment as a matter of law and will deny the motion for judgment on the pleadings.

IV.  **CONCLUSION**

For the reasons explained above, the Court **DENIES** Constar's motion for judgment on the pleadings.

**SO ORDERED** at New Haven, Connecticut, this 15th day of March, 2024.

                 */s/ Victor A. Bolden*
                 Victor A. Bolden
                 United States District Judge